08CV3561
JUDGE DARRAH
MAGISTRATE JUDGE DENLOW
RCC

**Exhibit A**

AO88 (Rev. 1/94) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

Northern                    **DISTRICT OF**                    Illinois

MQVP, INC.

V.                                **SUBPOENA IN A CIVIL CASE**

KEYSTONE AUTOMOTIVE INDUSTRIES, INC.

Case Number:¹ 07-10248 - ED of MI

TO:  AUDATEX
     888 TECHNOLOGY DRIVE
     SUITE 1
     ANN ARBOR, MICHIGAN

☐ **YOU ARE COMMANDED** to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐ **YOU ARE COMMANDED** to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☑ **YOU ARE COMMANDED** to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See attached Notice to Appear and Produce

| PLACE    Audatex, 888 Technology Drive, Suite A, Ann Arbor, MI 48106 | DATE AND TIME 6/6/2008 10:00 am |
|---|---|

☐ **YOU ARE COMMANDED** to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure. 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| _signature_ | 4-24-08 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Hugh A. Woodrow (P56468), Kitch Drutchas Wagner Valitutti & Sherbrook, One Woodward Ave, Ste. ___, ___
48226 (313)965-7900

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

¹ If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing ... ... ...en contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend

trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MQVP, INC.,

      Plaintiff(s),                   Hon. John Feikens

v.                                  Case No.: 07-10248

KEYSTONE AUTOMOTIVE INDUS., INC.,

      Defendant(s).                 /

| | |
|---|---|
| TIMOTHY S. GROUSTRA (P48966) | MICHAEL G. CRUSE (P38837) |
| HUGH A. WOODROW (P56468) | WARNER, NORCROSS & JUDD, LLP |
| KITCH DRUTCHAS WAGNER VALITUTTI | Attorneys for Defendant |
|   & SHERBROOK | 2000 Town Center, Suite 2700 |
| As Counsel to Charles Taunt & | Southfield, MI 48075 |
| Associates, PC., Trustee for MQVP, Inc. | (248) 784-5131 |
| Attorneys for Plaintiff | |
| 10 S. Main Street, ,Suite 200 | |
| Mt. Clemens, MI 48043 | |
| (586) 493-4413 | |

                                  /

## NOTICE TO APPEAR AND PRODUCE DIRECTED TO AUDATEX

    NOW COMES Plaintiff, MQVP, Inc. ("MQVP"), by and through its attorneys,

KITCH, DRUTCHAS, WAGNER,VALITUTTI & SHERBROOK, demands AUDATEX. to

allow inspection of its files more specifically outlined below on **Friday, June 6, 2008 at**

**10:00 a.m.** This request for production is made pursuant to Federal Rule of Civil

Procedure 34 .

    Demand is hereby made for Audatex to allow inspection of the following:

    1.      Provide FTP site access and sortable excel spreadsheets of all estimates

written between January 1, 2002 and December 31, 2007 that reference MQVP or



Global Validator's, Inc. Permit inspection of any and all documents, files, papers, electronic material generated that bear the letters "MQVP" or Global Validators, Inc. or any document, file, paper, electronic material or insurance estimate that relates to MQVP or Global Validators, Inc., including the name of the insurance company for which the estimate was written, its independent contractors, adjusters and contract estimating agencies, and the collision repair facilities.

Respectfully submitted,

KITCH DRUTCHAS WAGNER
VALITUTTI & SHERBROOK

By: __s/ Hugh A. Woodrow_____
HUGH A. WOODROW
Special Counsel to the Trustee
One Woodward Avenue, Suite 2400
Detroit, MI 48226-5485
(313) 965-7539
hugh.woodrow@kitch.com
P56468

Dated:  April 24, 2008

DET02\1242571.01



**Exhibit B**

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

In the matter of:                                    Case No. 06-51141-MBM

MQVP Inc.,                                           Chapter 11
f/k/a GVI Inc.,
                                                     Hon. Marci B. McIvor
              Debtor.
_____/

MQVP Inc.,
                                                     Adversary Proceeding
              Plaintiff,                             No. 06-        -MBM


v.                                                   **Complaint**
                                                     **Jury Demand**

Keystone Automotive Industries Inc,

              Defendant.
_____/


## COMPLAINT

NOW COMES Plaintiff, MQVP Inc., by and through its attorneys and for its

complaint states and pleads as follows:


### NATURE OF COMPLAINT

1.      This is an action for trademark infringement wherein Keystone Automotive

Industries Inc. (hereinafter referred to as "Keystone"), an aftermarket automotive

parts distributor, represents it sells and/or distributes MQVP® ("program") parts

and uses MQVP Inc.'s registered service mark without authorization. MQVP Inc.,

also brings causes of action under the Unfair Trade Practices Act. (M.C.L.A. 445.903 et seq.), California statutory law and violations of the common law torts for unfair competition and intentional interference with contract, intentional interference with business expectancy and intentional interference with prospective economic advantage.

## JURISDICTION AND VENUE

2.      MQVP Inc., is a Michigan corporation with its principal place of business at 2669 Bond Street, Rochester Hills, Michigan.

3.      Upon information and belief, Keystone is a California corporation in the process of relocating its corporate headquarters from California to Nashville, Tennessee at 624 Grassmere Park Drive, Suite 30.

4.      Upon information and belief, Keystone conducts business through inter-state commerce wherein it buys aftermarket parts, then sells those parts using the MQVP® mark. Specifically, Keystone maintains warehouses throughout the United States, including the locations listed in the attached **Exhibit A**.

5.      The claims made in this complaint arise under the Lanham Act, 15 U.S.C. § 1051, et seq. and California and Michigan statutory and common laws.  This Court has subject matter jurisdiction over the federal claims asserted in this action pursuant to 28 U.S.C § 1331(federal question jurisdiction), and 28 U.S.C. § 1338 (copyright and trademark jurisdiction).  This Court has jurisdiction over the claims arising under state law pursuant to 28 U.S.C. § 1367 (supplemental

jurisdiction). In addition, this Court has subject matter jurisdiction over the claims herein pursuant to 28 U.S.C. § 1333 (diversity jurisdiction) in that the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs. Venue is proper pursuant to 28 U.S.C. § 1391.

## FACTUAL ALLEGATIONS
## COMMON TO ALL

6.     MQVP Inc., maintains a registered service mark "MQVP®", issued December 18, 2001, representing a global supply chain quality and traceability assurance program known as the Manufacturers' Qualification and Validation Program ("MQVP"); U.S. Trademark Registration No. 2,519,998. A copy of this registration is attached as **Exhibit B**.

7.     MQVP Inc., uses and displays the mark in its advertisements and materials to conduct business and promote the MQVP® program. The MQVP® mark is an inherently distinctive, non-functional and strong mark. The MQVP® mark has also acquired distinctiveness through secondary meaning as a result of MQVP Inc.'s extensive, prolonged, and continuous use and promotion in commerce throughout the United States since at least October 11, 2000.

8.     MQVP® is an aftermarket automobile parts quality assurance, distribution and traceability program.

9.     MQVP® participants include aftermarket part manufacturers, aftermarket part distributors and Insurance companies, all of which execute a contract with MQVP Inc., and pay requisite fees.

10.     Only MQVP® participants are authorized to use the MQVP® mark in connection with the sale of MQVP® parts through the MQVP® ("program"), and only in accordance with the terms and conditions of their MQVP Inc., contract.

11.     Aftermarket parts that qualify for the MQVP® program must be manufactured by MQVP® manufacturers who are QS-9000 registered at the location where the MQVP® program parts are manufactured and conform to specific requirements outlined in the MQVP® manual.

12.     MQVP® ("program") parts can be contractually distributed only through the MQVP® distribution network of MQVP® participating distributors.

13.     Distributors seeking to participate in the MQVP® program must have an effective quality control system in place, actively working toward ISO 9000 registration and have created an ISO 9000 Implementation Plan acceptable to MQVP Inc.

14.     When an MQVP® ("program") part is manufactured and checked against specifications, quality aspects and characteristics, it is entered into GOCERTS® (Global On-Line Certification System), a web based application maintained by MQVP Inc., from which the final customer receives the complete quality certification, warranty and traceability for the product ordered.  In order for a part to qualify as an MQVP® ("program") part, each link in the chain of custody must be reported and entered into the GOCERTS® system maintained by MQVP Inc,. in accordance with MQVP® provisions.

15.   These requirements assure that MQVP® ("program") parts are fully traceable through MQVP®'s distribution chain of custody from raw material to the finished product  and installed on a particular automobile by a collision repair shop.  MQVP® participating insurers and their insured's specifically request the use of MQVP® ("program") parts so that they can receive the complete "basket" of quality certification, warranty and traceability associated with MQVP® and the use of the MQVP® mark.

16.   Through its extensive use, advertising and promotion, the public recognizes that MQVP® ("program") parts are backed by the complete quality certification, warranty and traceability of MQVP® operated by MQVP Inc.  MQVP Inc., has achieved a high level of commercial success in operating the MQVP® ("program"), and has built a valuable reputation and substantial goodwill, with which the MQVP® mark has become synonymous.

17.   "MQVP®" is widely publicized within the aftermarket parts industry through trade journals (**Exhibits C, D and E**), trade associations such as TABA and ABPA, and trade shows such as AIAG, NACE and AAPEX.

18.   Keystone also advertises in the aforementioned trade journals, attends and participates in said trade shows, and is a member of the ABPA, with executives seated on the board of ABPA.

19.   Keystone is also a MQVP® participating distributor pursuant to an agreement dated September 15, 2003, ("Agreement" attached as **Exhibit F**). The MQVP® Manual is incorporated by reference in the Agreement (Agmt. ¶ 1), but

not attached to this complaint as it is too voluminous to do so. It is believed, however, that Keystone maintains a copy.

20.     Although authorized to distribute MQVP® parts as a MQVP® participating distributor, Keystone also distributes and sells non-MQVP® parts.

21.     MQVP Inc., never authorized Keystone to use the mark "MQVP®," or any colorable imitation thereof, on labels or product.

22.     MQVP Inc., never authorized Keystone to use the mark "MQVP®," or any colorable imitation thereof, in connection with any non-MQVP® part, service or product.

23.     Keystone used and continues to use the mark "MQVP®," as a word, term, name, symbol, or device, in commerce on labels and in connection with goods and services that are not part of the MQVP® ("program"). **Exhibit G**.

24.     Keystone maintains a corporate policy and practice and otherwise represents to its customers and potential customers that it can sell MQVP® parts or parts from the MQVP® ("program") for non-MQVP® participating insurance company repairs.

25.     Keystone maintains a corporate policy and practice of distributing and selling non-MQVP® parts as "MQVP® parts" for non MQVP® participating insurance company repairs.

26.     Keystone has, without consent of MQVP Inc., conspired with estimate service providers and others to, and did, wrongfully manipulate MQVP Inc.'s,

data referencing MQVP® and causing disruption of MQVP Inc.'s business operations and relations.

27.     Keystone's use of the "MQVP®" mark and its conduct alleged herein is likely to confuse the public into believing that non-MQVP® parts sold by Keystone have some affiliation, connection, or association with MQVP Inc. and the MQVP® ("program").  Further, Keystone's use of the MQVP® mark and its conduct alleged herein is likely to confuse the public into believing that the parts sold by Keystone's have the nature, characteristics, and/or qualities of genuine MQVP® ("program") parts, including the quality certification, warranty and traceability described herein above.

28.     Keystone's unauthorized use of the MQVP® mark in connection with its commercial promotion of its goods and services as an MQVP® distributor misrepresents the nature, characteristics and qualities of its goods and services that are not part of the MQVP® ("program").     Contrary to such misrepresentations, Keystone is not authorized and is incapable of selling non-MQVP® ("program") parts with the MQVP® quality certification, warranty and traceability outside of the MQVP® ("program").  Keystone's false claims have the tendency to deceive, and have actually deceived, purchasers and consumers of aftermarket parts into believing that non-MQVP® parts sold by Keystone have the MQVP® quality certification, warranty and traceability, which is a material component to MQVP® parts.

29.     Keystone does not have or use a similar mark or program to that of MQVP Inc.'s.   Rather, its use and reference to "MQVP" is to the "MQVP®" mark and "program" of MQVP Inc.

30.     Keystone's misuse of the "MQVP®" mark is willful, deliberate, fraudulent, intentional, calculating and in bad faith, and was made with the knowledge and purpose of: diluting the mark and MQVP Inc.'s interest in the mark; exploiting it for financial gain; defrauding MQVP Inc., its program participants and consumers of MQVP® parts and services; and destroying the MQVP® ("program") in favor of its own product line.

31.     Keystone's conduct alleged herein has caused, and will continue to cause, irreparable injury to MQVP Inc., by virtue of the loss of control of the reputation and goodwill associated with the "MQVP®" mark and the MQVP® ("program"), as well as the quality and traceability of goods associated with the "MQVP®" mark and the MQVP® ("program"). In addition, as a result of Keystone's wrongful conduct, sales and potential future participants are wrongfully diverted from MQVP®, thereby eroding the commercial value of the MQVP® membership.

## COUNT I
### (False Designation)
(15 USCA § 1125(a)(1)(A))
(15 USCA § 1114)
(Section 43(a) of the Lanham Trademark Act)

32.     MQVP Inc., repeats and realleges all allegations in Paragraphs 1-31 as though fully re-written herein.

33.     Keystone's misuse of the "MQVP®" mark is likely to cause confusion, mistake, or deceive consumers as to the affiliation, connection, or association, or as to the origin, sponsorship, or approval as to Keystone's non-MQVP® goods, services, or commercial activities with those of MQVP Inc.'s in violation of the Lanham Act, Section 43(a), 15 USCA §1125(a)(1)(A) and 15 USCA §1114(1).

34.     As a direct result of Keystone's misuse of MQVP Inc.'s mark, MQVP Inc., has suffered substantial harm including, but not limited to, irreparable harm which cannot be remedied unless Keystone is enjoined from further use of the mark.

35.     Keystone has and continues to profit from the misuse of the "MQVP®" mark to the detriment of MQVP Inc.

WHEREFORE, MQVP Inc., prays that this Honorable Court issue an Order and Judgment as follows:

a)      That Keystone its partners, directors and officers, agents, servants, employees, and all other persons in active concert or privity or in participation with Keystone be enjoined from directly or indirectly misusing or falsely referring to the "MQVP®" mark or any other marks of MQVP Inc., or any colorable imitation

thereof, as part of any trademark, service mark or trade name, or in such a way as to likely cause confusion, mistake, or to deceive as to the affiliation, connection, or association of MQVP Inc., with Keystone or as to the origin, sponsorship, or approval of non-MQVP® goods, services, or commercial activities, with MQVP Inc.;

b)      That Keystone be required to account to MQVP Inc., for all income and benefits received by Keystone from the misuse of the "MQVP®" mark, or colorable imitation thereof, and that Keystone be required to disgorge all such income;

c)      That Keystone be required to deliver to MQVP Inc., at Keystone's sole expense, any and all goods or products which use or bear any mark belonging to MQVP Inc., or any colorable imitation thereof;

d)      That Keystone pay MQVP Inc., all damages suffered by MQVP Inc., as a result of Keystone's violation of MQVP Inc.'s rights under section 32 of the Lanham Act;

e)      That Keystone pay MQVP Inc., its costs and attorney fees, and all other damages, including treble its actual damages, available for violations of the Lanham Act, 15 U.S.C. §§ 1051, *et seq.*; and

f)      All such other relief as this Honorable Court deems just.

Case 1:08-cv-03561   Document 1-2   Filed 06/20/2008   Page 17 of 25

**COUNT II**
**(False Advertising)**
**(15 USCA §1125(a)(1)(B))**

36.     MQVP Inc., repeats and realleges all allegations in Paragraphs 1-31 as though fully re-written herein.

37.     Keystone's misrepresentation of the nature, characteristics and qualities of non-MQVP parts by associating them with the MQVP® ("program") is a violation of 15 USCA §1125(a)(1)(B) of §43(a) of the Lanham Act.

38.     As a direct result of Keystone's false representations, MQVP Inc., has suffered substantial harm including, but not limited to, irreparable harm which cannot be remedied unless Keystone is enjoined from further false representations.

39.     Keystone has and continues to profit from the false representations to the detriment of MQVP Inc.

WHEREFORE, MQVP Inc., prays that this Honorable Court issue an Order and Judgment as follows:

a)      That Keystone its partners, directors and officers, agents, servants, employees, and all other persons in active concert or privity or in participation with Keystone be enjoined from directly or indirectly misusing or falsely referring to the "MQVP®" mark or any other marks of MQVP Inc., or any colorable imitation thereof, as part of any trademark, service mark or trade name, or in such a way as to likely cause confusion, mistake, or to deceive as to the affiliation,

connection, or association of MQVP Inc., with Keystone or as to the origin, sponsorship, or approval of non-MQVP® goods, services, or commercial activities, with MQVP Inc.;

b)     That Keystone be required to account to MQVP Inc., for all income and benefits received by Keystone from the misuse of the "MQVP®" mark, or colorable imitation thereof, and that Keystone be required to disgorge all such income;

c)     That Keystone be required to deliver to MQVP Inc., at Keystone's sole expense, any and all goods or products which use or bear any mark belonging to MQVP Inc., or any colorable imitation thereof;

d)     That Keystone pay MQVP Inc., all damages suffered by MQVP Inc., as a result of Keystone's violation of MQVP Inc.'s rights under section 32 of the Lanham Act;

e)     That Keystone pay MQVP Inc., its costs and attorney fees, and all other damages, including treble its actual damages, available for violations of the Lanham Act, 15 U.S.C. §§ 1051, *et seq.*; and,

f)     All such other relief as this Honorable Court deems just.

## COUNT III
## (State Statutory Claims)
(MCLA §445.903 *et seq*)
(Cal Bus & Prof Code §17200 *et seq*)

40.    MQVP Inc. repeats and realleges all allegations in Paragraphs 1-39 as though fully set herein.

41.    Keystone secured sales requests for "MQVP®" parts but did not provide a "MQVP®" part.

42.    Keystone secured sales by representing that non-participating insurance companies could obtain from Keystone the "same parts as sold in the MQVP® ("program") without having to join MQVP®".

43.    Keystone's conduct aforesaid has caused a probability of confusion or misunderstanding as to the source, sponsorship, approval, or certification of non-MQVP® goods or services.

44.    Though its conduct aforesaid, Keystone has deceptively represented that non-MQVP® goods or services have sponsorship, approval, or characteristics that they do not have.

45.    As a direct result of Keystone's violations, as aforesaid, MQVP Inc. has suffered substantial harm including, but not limited to, irreparable harm which cannot be remedied unless Keystone is enjoined from misuse of the service mark.

WHEREFORE, MQVP Inc. prays that this Honorable Court issue an Order and Judgment as follows:

(a)    That Keystone its partners, directors and officers, agents, servants, employees, and all other persons in active concert or privity or in participation with Keystone be enjoined from directly or indirectly misusing the "MQVP®" mark or any other mark of MQVP Inc., or any colorable imitation thereof, as part of any trade mark, service mark, or trade name, or in any way likely to cause confusion, mistake, or to deceive as to the affiliation, connection, or association of Keystone with MQVP Inc., or as to the origin, sponsorship, or approval of non-MQVP® services or commercial activities, by MQVP Inc.;

(b)    That Keystone be required to account to MQVP Inc., for all income and benefits received by Keystone from the misuse of MQVP Inc.'s mark, or colorable imitation thereof, and that Keystone be required to disgorge all such income;

(c)    That Keystone be required to deliver to MQVP Inc., at Keystone's sole expense, any and all goods or products which use or bear any mark to MQVP Inc.'s, or any colorable imitation thereof;

(d)    That Keystone pay to MQVP Inc., its costs and attorney fees, and all other damages available for violation of the Unfair Trade Practices Act, M.C.L.A. §445.903, *et seq* and Cal Bus & Prof Code §17200 *et seq*; and

(e) All such other relief as this Honorable Court deems just.

## COUNT IV
## (Common Law Unfair Competition)

46.    MQVP Inc., repeats and realleges all allegations in Paragraphs 1-31 as though fully re-written herein.

47.    Through continued and extensive use and advertising, the service mark "MQVP®" has become exclusively identified with MQVP Inc.

48.    Keystone has wrongfully used and continues to wrongfully use the mark and/or colorable imitation thereof, in commerce, in connection with the sale, offering for sale, distribution, or advertising of its goods and services for purposes of deceiving the public, in violation of MQVP Inc.'s right under the common law of unfair competition. Keystone's conduct has caused, and is likely to cause confusion, or to cause mistake, or to deceive consumers and the public.

49.    Keystone's violation of MQVP Inc.'s rights in the mark is willful, deliberate, fraudulent, calculating and intentional, and was made with the knowledge that such violation would damage MQVP Inc., and the mark.

50.    As a direct result of Keystone's conduct, MQVP Inc., has suffered substantial harm including, but not limited to, irreparable harm which cannot be remedied unless Keystone is enjoined from misuse of the mark.

WHEREFORE, MQVP Inc., prays that this Honorable Court issue an Order and Judgment as follows:

a)     That Keystone its partners, directors and officers, agents, servants, employees, and all other persons in active concert or privity or in participation with Keystone be enjoined from directly or indirectly misusing or referring to the "MQVP®" mark or any other marks of MQVP Inc., or any colorable imitation thereof, as part of any trademark, service mark or trade name, or in such a way as to likely cause confusion, mistake, or to deceive as to the affiliation, connection, or association of MQVP Inc., with Keystone or as to the origin, sponsorship, or approval of non-MQVP® goods, services, or commercial activities, with MQVP Inc.;

b)     That Keystone be required to account to MQVP Inc., for all income and benefits received by Keystone from the misuse of the "MQVP®" mark, or colorable imitation thereof, and that Keystone be required to disgorge all such income;

c)     That Keystone be required to deliver to MQVP Inc., at Keystone's sole expense, any and all goods or products which use or bear any mark belonging to MQVP Inc., or any colorable imitation thereof;

d)     That Keystone pay MQVP Inc., all damages suffered by MQVP Inc., as a result of Keystone's violations of MQVP Inc.'s rights under the common law of unfair competition;

e)     That Keystone pay MQVP Inc., its costs and attorney fees, and all other damages available for violations of the common law of unfair competition; and,

f)     Such other relief as this Honorable Court deems just.

## COUNT V
## (Breach of Contract)

51.     MQVP Inc., repeats and realleges all allegations in Paragraphs 1-31 as though fully re-written herein.

52.     The Agreement states that "by virtue of being a participant in MQVP®, [Keystone] will gain access to and become familiar with Proprietary Information" (Agmt. ¶7 A) the breach of which shall entitle MQVP Inc., to immediate injunctive relief (Agmt. ¶7 B).

53.     Keystone secured sales of MQVP® parts but did not report those sales in GOCERTS®, contrary to ¶ 8 A(vi) of the Agreement.

54.     Keystone secured sales requests for MQVP® parts but did not provide a MQVP® part, contrary to ¶ 8 A(v) of the Agreement.

55.     The above stated conduct is a direct breach of the agreement (**Exhibit F**) causing damage to MQVP Inc.

56.     Keystone secured sales by representing that non-participating insurance companies could obtain from Keystone the "same parts as sold in the MQVP® ("program") without having to join MQVP®".

WHEREFORE, MQVP Inc., prays that this Honorable Court issue an Order and Judgment for $20,000,000, together with attorney fees and costs and any further relief this Court deems appropriate.

## COUNT VI
## (Intentional Interference with Business Expectancy)

57.     MQVP Inc., repeats and realleges all allegations in Paragraphs 1-31 and 52-55 as though fully re-written herein.

58.     MQVP Inc., had business expectancies of growing its program among insurance companies.

59.     Keystone knew of MQVP Inc.'s business expectancies and purposefully and calculatingly in bad faith circumvented new participation in MQVP® ("program") by offering product "the same as" that sold through MQVP® as well as offering direct buy contracts between Keystone and insurance companies.

60.     Keystone knew or should have known that this conduct would harm MQVP Inc.

61.     Keystone's actions and conduct were intentional for the purpose of profiting from use of confidential information, the "MQVP®" mark and for the further purpose of causing harm to MQVP Inc.


WHEREFORE, MQVP Inc., prays that this Honorable Court issue an Order and Judgment for $20,000,000, together with attorney fees and costs and any further relief this Court deems appropriate follows:

## JURY DEMAND

Plaintiff MQVP Inc., demands a trial by jury of all issues so triable with respect to

MQVP Inc.'s Complaint.


Respectfully submitted,


 /s/ Erik A. Lindquist
Erik A. Lindquist (P68540)
Ronald E. McNulty (P35313)
2669 Bond Street
Rochester Hills, MI 48309
(248) 853-2801


Dated: November 30, 2006

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| MQVP, INC., | ) | FILED: JUNE 20, 2008 |
|  | ) | 08CV3561 |
| Plaintiff, | ) | JUDGE DARRAH |
|  | ) | MAGISTRATE JUDGE DENLOW |
|  | ) Case No. | RCC |

<table>
<tr><td>)</td><td><em>Pending in</em> U.S. Bankruptcy Court</td></tr>
<tr><td>)</td><td>E. D. of Michigan</td></tr>
<tr><td>)</td><td>Southern Division</td></tr>
<tr><td>v.    )</td><td></td></tr>
<tr><td>)</td><td>Case No. 06-51141-MBM</td></tr>
<tr><td>)</td><td>Chapter 11</td></tr>
<tr><td>)</td><td></td></tr>
<tr><td>KEYSTONE AUTOMOTIVE .,  )</td><td>Adversarial Proceeding No. 07 cv 10248</td></tr>
<tr><td>INDUSTRIES, INC.,  )</td><td></td></tr>
<tr><td>)</td><td></td></tr>
<tr><td>Defendant.  )</td><td></td></tr>
</table>

## MOTION OF AUDATEX TO QUASH OR MODIFY SUBPOENA

Audatex North America, Inc. ("Audatex"), a non-party herein, by Greenberg Traurig, LLP, its attorneys herein, moves this Court, pursuant to Federal Rule of Civil Procedure 45(c)(3), to quash or modify the Subpoena served upon it by Plaintiff MQVP, Inc. ("MQVP, Inc.") in order to avoid undue burden and to protect information which is both proprietary and treated as confidential under binding contracts with third parties.  In support of this Motion, Audatex has contemporaneously filed a Memorandum in Support of this Motion, and states as follows:

1.      Audatex is a company which provides claims settlement data and services to the insurance industry. Among the products it has developed, markets, and sells is a collision repair estimating product which may include, at the insurance company's option, information regarding the availability of non-OEM "aftermarket" replacement parts.

2.     MQVP is involved in the marketing and sale of non-OEM "aftermarket" replacement parts.

3.     On or around April 30, 2008, MQVP, Inc. served Audatex with a subpoena with an original return date of June 6, 2008 (the "Subpoena"). A copy of the Subpoena is attached hereto as Exhibit "A". Prior to that original return date, Audatex and MQVP Inc. agreed to extend the Subpoena return date to June 20, 2008.

4.     The Subpoena purports to compel Audatex to produce all documents existing from the beginning of 2002 through the date of compliance falling into three broad categories:

> a)  All collision repair estimates which reference MQVP or Global Validator, Inc.;
>
> b)  All documents, files, papers, and electronic material (whether collision repair estimates or not) which bear the letters "MQVP" or "Global Validator, Inc."; and
>
> c)  All documents, files, papers, electronic material, and insurance estimates which "relates to" MQVP or Global Validator, Inc., including the names of the insurance company for which the estimate was written, its independent contractors, adjusters, and contract estimating agencies, and the collision repair facilities.

5.     As set forth more fully in its supporting memorandum, Audatex generates several million collision repair estimates each year. The number of collision repair estimates which would need to be scrutinized in order to comply with the literal scope of this Subpoena number between 35,000,000 and 40,000,000.

6.     In order to comply, Audatex would need to search its database for MQVP with respect to all aftermarket part locator reports, whether or not those reports are tied to an estimate. Audatex would then need to manually print the screen for each such report. This undertaking is hugely time-consuming and costly, and should be narrowed to more directly address the issues in dispute in the litigation between MQVP and the Defendant. Since Audatex is a non-party, it has

no clear idea how the Subpoena might be narrowed, but knows it must be in order to avoid a huge burden in complying. Even if its costs were fully paid for by MQVP, the man-hours needed to comply would cause a material hardship to Audatex in running its day-to-day business. ,

7.    Moreover, the agreements between Audatex and its insurance industry clients impose an obligation on Audatex to maintain the confidentiality of data handled by Audatex involving collision repair estimates for the vehicles of insureds. Compliance with the Subpoena would violate those contracts without a) a court order directing Audatex to provide discrete, identifiable information, and b) a protective order maintaining and preserving the confidentiality of that information.

8.    Audatex is entitled to protection under Federal Rule of Civil Procedure 45(c)(3), which imposes upon MQVP, as the issuer,  a duty to avoid imposing undue burden or expense on a person subject to the subpoena and to avoid disclosure of confidential commercial information.

9.    In support of this Motion, Audatex refers to and incorporates, as if fully set herein, its Memorandum in Support of its Motion to Quash or Modify MQVP Inc.'s Subpoena. That Memorandum has been filed and will be served contemporaneously with this motion.

WHEREFORE, Audatex respectfully requests that this Court enter one or more Orders,

A)    Quashing the Subpoena in its entirety or modifying the Subpoena so as to minimize the burden and expense imposed upon Audatex;

B)    Requiring, as a condition of compliance, that MQVP reimburse Audatex for all of its expenses, including labor costs, computer processing time, copying expense, legal expenses associated with this motion, and all other costs arising out of the Subpoena;

C)    Providing for a protective order which preserves the confidentiality of the information which is ultimately provided in compliance with the Subpoena; and

D)    For such other and further relief as the Court deems just.

Date:   June 20, 2008                                   Respectfully submitted,

                                                        AUDATEX NORTH AMERICA, INC.,

                                                        By: _____
                                                              One of its Attorneys

Paul T. Fox (A.R.D.C. No. 3121741)
Tanisha R. Jones (A.R.D.C. No. 6283173)
Attorneys for Audatex
GREENBERG TRAURIG, LLP
77 West Wacker Drive, Suite 2500
Chicago, Illinois 60601
Tel. (312) 456-8400
Fax (312) 456-8435