IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MQVP, INC., <br><br>  Plaintiff, <br><br> v. <br><br> KEYSTONE AUTOMOTIVE ., INDUSTRIES, INC., <br><br>  Defendant. | FILED: JUNE 20, 2008 <br> 08CV3561 <br> JUDGE DARRAH <br> MAGISTRATE JUDGE DENLOW <br> Case No.  RCC <br><br> *Pending in* U.S. Bankruptcy Court <br> E. D. of Michigan <br> Southern Division <br><br> Case No. 06-51141-MBM <br> Chapter 11 <br><br> Adversary Proceeding No. 07 cv 10248 |

### MEMORANDUM OF AUDATEX IN SUPPORT OF ITS MOTION TO QUASH OR MODIFY SUBPOENA

Audatex North America, Inc. ("Audatex"), a non-party to the captioned adversary proceeding, has moved this Court, pursuant to Federal Rule of Civil Procedure 45(c)(3), to quash or modify the Subpoena served upon it by Plaintiff MQVP, Inc. ("MQVP, Inc."). This memorandum is submitted in support of that motion.

### INTRODUCTION

Audatex is a global provider of insurance claims solutions. Audatex markets and sells its products to insurance companies to assist them in settling claims. Among the products Audatex offers to its insurance company customers is a collision repair estimate. Audatex creates approximately 5,000,000 such estimates for its insurance company clients each year.

CHI 57269499v2 6/19/2008

MQVP markets and sells "aftermarket" non_OEM replacement parts. It has become embroiled in some type of dispute over such aftermarket parts with Keystone Automotive Industries, Inc. In connection with that dispute, MQVP has served a subpoena on Audatex, which otherwise has no interest in the MQVP/Keystone dispute. A copy of that subpoena is attached as **Exhibit A**. The subpoena seeks three incredibly broad categories of information which boil down to this: Show us every piece of paper and electronic record created or received in the last six and one half years which mentions, in any context, MQVP.

Audatex is entitled to protection from this comically broad subpoena under Federal Rule of Civil Procedure 45(c)(3). That subpart of Rule 45 imposes upon issuers a duty to avoid imposing undue burden or expense on a person subject to the subpoena and to avoid disclosure of confidential commercial information. In this case, MQVP, Inc. served a Subpoena that is overbroad and unreasonable on its face — particularly given that Audatex is not a party to this case, and which seeks documents and information from Audatex that would be incredibly costly and time consuming to compile, and which are themselves subject to confidentiality and non-disclosure requirements. Audatex therefore requests that this Court quash the Subpoena as overly broad and unduly burdensome, or in the alternative, narrow the Subpoena and order MQVP, Inc. to cover the costs of Audatex employees attempts to find documents responsive to the Subpoena.

### BACKGROUND

Audatex is a part of the Solera Companies. Audatex and its sister companies provide a complete range of claims settlement products, technology solutions, shared services and consulting for the automobile insurance claims processing industry. It is the leading global

provider of automobile claims solutions. Audatex is active in 47 countries and has a global network of more than 50,000 customers. Many of Audatex's customers, including major insurance companies, have contractually obligated Audatex to maintain the confidentiality of the information with which it is entrusted, and to not disclose its confidential commercial information without a court order. Audatex's customers use Audatex's data repository to write more than six million estimates annually in North America. Recognized as an industry standard, the Audatex data repository is a trusted automation tool used by insurers, independent appraisers and repair shops throughout North America.

MQVP, Inc. maintains a registered service mark: "MQVP", representing a chain quality and traceability assurance program known as Manufacturers' Qualification and Validation Program ("MQVP"). MQVP, Inc. filed a Complaint against Defendant Keystone Automotive Industries, Inc. ("Keystone"), an aftermarket automotive parts distributor authorized to distribute and sell MQVP, Inc. program parts. A true and correct copy of the Complaint as filed in the E.D. of Michigan is attached hereto as **Exhibit B.** MQVP Inc. alleges that Keystone violated the Lanham Act, the Unfair Trade Practices Act, as well as various statutory laws and common law torts. (See Exhibit B, para. 1, 19) MQVP, Inc. alleges that Keystone used and continues to use the mark "MQVP" on labels and in connection with goods and services that are not a part of the MQVP, Inc. program. (See Exhibit B, para. 23).

On or around April 30, 2008, MQVP, Inc. served Audatex with the Subpoena attached as Exhibit A. The Subpoena had an original return date of June 6, 2008. Prior to that return date, Audatex and MQVP Inc. agreed to extend the Subpoena compliance date to June 20, 2008. MQVP Inc.'s Subpoena requests the following three categories of documents during the time

period beginning January 1, 2002, and continuing through the date of compliance, approximately six and one half years:

    a)     All estimates that reference MQVP or Global Validator, Inc.;

    b)     All documents, files, papers, and electronic material generated that bear the letters "MQVP" or "Global Validator, Inc.";

    c)     All documents, files, papers, electronic material, and insurance estimates that relates to MQVP or Global Validator, Inc., including the names of the insurance company for which the estimate was written, its independent contractors, adjusters, and contract estimating agencies, and the collision repair facilities.

(See Exhibit A). Essentially, the subpoena seeks every document Audatex has or has received in the last six plus years which contains the letters "MQVP" or the name "Global Validator, Inc." anywhere in its four corners. Counsel for Audatex conferred with counsel for MQVP, Inc. to discuss its objections to the Subpoena. Counsel for MQVP, Inc. would only agree to limit the subpoena geographically to the United States of America. It also wants to have an outside vendor be given essentially unlimited (both in time and scope) access to the very robust and valuable database upon which Audatex relies to run its business in order to extract whatever information MQVP seeks. Neither "accommodation" comes close to addressing Audatex's concerns, and this Court should quash or radically modify the subpoena for the reasons discussed below.

## ARGUMENT

Audatex requests that the Court employ its powers under Rule 45 to quash MQVP Inc.'s Subpoena because on its face, the Subpoena is overbroad and unduly burdens Audatex. The Subpoena is undeniably broad. It seeks every document (defined broadly to include electronic records) which mention, in any context, MQVP or Global Validators. There is no requirement

that these records be relevant to the dispute between MQVP and Keystone, and there has plainly been no thought at all given to the burden this will impose upon Audatex. That burden is informed by the fact that Audatex's collision estimating data repository is not readily searchable by the requested parameters. After conducting an analysis of the technology and software used by Audatex, its technicians have concluded that a search of this kind would be incredibly burdensome, if not impossible, to accomplish. And further, a search of all Audatex documents for a reference to MQVP or Global Validators would require the creation of new technology and an incredible amount of time and money.

Putting aside the technological obstacles to compliance, the Subpoena requests confidential research and commercial information. The information sought has been provided, in large part, by insurance companies with privacy obligations to their insureds. The agreements between Audatex and those insurance companies include confidentiality and/or non-disclosure agreements. Compliance without a protective order and an order directing compliance would place Audatex in breach of those agreements. Finally, MQVP Inc.'s request that Audatex produce "excel spreadsheets" and "identify" information, essentially that the data be organized and assembled, goes well beyond the requirements of Rule 45.

This motion is timely as it is brought before the end of the compliance period. See Fed. R. Civ. P. 45(c)(3)(A) (which permits a court to quash a subpoena "[o]n timely motion." In general courts have read "timely" to mean within the time set for compliance with the subpoena. See United States ex. Re. Pogue v. Diabetes Treatment Center of Amer. Inc., 238 F. Supp.2d 270, 278 (D.D.C. 2002) ( "Timely is not defined in the rule nor elaborated upon in the advisory committee's notes. The phrase "timely" was adopted in 1991 and replaced the previous

formulation, "Promptly and in any event at or before the time specified in the subpoena for compliance therewith"); see also Innomed Labs, LLC v. Alza Corp., 211 F.R.D. 237, 240 (S.D.N.Y 2002).

### LEGAL STANDARD

Rule 45(c) protects a party from abuse of the Subpoena power by requiring the party or attorney responsible for issuing the Subpoena to avoid imposing an undue burden. See FED. R. CIV. P. 45(c) ("A party or an attorney responsible for the issuance and service of a subpoena *shall* take reasonable steps to avoid imposing undue burden or expense on a person subject to that Subpoena. The Court in whose name the subpoena was issued *shall* enforce this duty..."); see also 7 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL CIVIL PRACTICE & PROCEDURE § 2463 (2d ed. 2007) ("With the expanded power of the attorney to issue subpoenas, the liability of the attorney from misusing Rule 45 has been expanded accordingly. . . . It *requires* those issuing or serving a subpoena to take reasonable steps to *avoid imposing undue burden or expense* on the party subject to the subpoena") (emphases added).

Likewise, Rule 45(c)(3)(A)(iv) mandates that a Court "*shall* quash or modify" a subpoena that requires disclosure of privileged information or subjects a person to undue burden. Unlike the discretionary language of Rule 26(c), under which the Court "may" enter an order of protection from an unduly burdensome request, the language of Rule 45 "is a command." Tyson v. AmeriGroup Ill., Inc., No. 02 C 6074, 2005 U.S. Dist. LEXIS 24929, at *7 (N.D. Ill. Oct. 21, 2005) (quoting Heidelberg Ams., Inc. v. Tokyo Kikai Seisakusho, Ltd., 333 F.3d 38, 41 (1st Cir. 2003)). Additionally, Rule 45 allows district courts to quash or modify a subpoena if it requires the disclosure of trade secrets or other confidential commercial information. See Fed.R.Civ.P.

45(c)(3)(B); See also Stock v. Integrated Health Plan, Inc. 241 F.R.D. 618, 621 -622 (S.D.Ill. 2007). For all of the reasons stated in this Memorandum, this Court should quash MQVP Inc.'s subpoena.

### A. MQVP INC.'S SUBPOENA IS OVERLY BROAD AND UNDULY BURDENSOME.

#### 1. The Subpoena is Overly Broad.

MQVP Inc.'s Subpoena request is wholly unlimited in scope. The Subpoena would require Audatex to search and produce *every* written or electronically stored document, note, invoice, estimate, contract, draft, billing entry, email, report, etc., made by *any* person, in *any* of its U.S. offices, which mentions, in any context, MQVP or Global Validator, between January 1, 2002 and December 31, 2007. On its face, the Subpoena does not come close to limiting the scope of discovery to only those claims related to Defendant - Keystone. Keystone did not start participating as a distributor of its MQVP products until September 15, 2003 and thereafter. (See Ex. B, para. 19). There is no conceivable basis upon which MQVP Inc. is entitled to impose upon Audatex the burden of searching for this breathtaking scope of documents.

MQVP Inc.'s refusal to limit the Subpoena to a reasonable scope is an unacceptable abuse of the subpoena power, and the Subpoena should be quashed. The Seventh Circuit has long recognized that the courts have "wide discretion" to limit the scope of discovery to topics of ultimate relevance. Eggleston v. Chicago Journeymen Plumbers' Local Union No., 130, U. A., 657 F.2d 890, 902 (7th Cir.1981); see also Continental Corp. v. Aetna Cas. & Sur. Co., 892 F.2d 540, 542 (7th Cir. 1989) (acknowledging a district court's discretion to quash a subpoena when it sought testimony deemed irrelevant to ongoing and future proceedings); Sabo v. Standard Oil

Co. of Ind., 295 F.2d 893, 894 (7th Cir. 1961) (upholding a district court's decision to quash a subpoena when it sought information deemed irrelevant to the proceedings).

### 2. The Subpoena is Unduly Burdensome.

Apart from reckless scope of the subpoena, there are daunting, perhaps unmanageable, technological obstacles to compliance. The documents MQVP seeks are not readily searchable in a way that would not involve extensive man-hours. The Audatex data repository includes a catalog of estimated prices of original manufacturer automotive parts (OEM parts) and after market automotive parts. Clients (*i.e.* insurance companies or automotive repair shops) will use Audatex's data repository and information to help determine and calculate estimates for automotive repairs after a collision or accident. There is no data field in the main data repository to search for whether or not a MQVP or Global Validator part or product is referred to in an estimate or any other document. If this Subpoena is not quashed, Audatex would be required to design a computer program to search through the 30 – 40 million documents that the data repository contains in order to try to find documents responsive to the Subpoena.

More troubling, is the fact that the search will likely yield very few responsive documents. If a client is licensed for and requests an after-market part, whether an MQVP, Inc. part or otherwise, then a separate After Market Part Locator Report ("AMPLR") will be generated and attached to the client's estimate. It is the AMPLR which most likely includes reference to a MQVP part or product. However, the data repository is not currently set to search through the AMPLR's. Beyond designing and creating a computer program to make the data repository searchable in a way to find only the instances where AMPLR's were requested, if the Subpoena is not quashed, Audatex would then be required to manually print off and review each

AMPLR to manually search for a reference to MQVP or Global Validators. This kind of review would undoubtedly involve millions of pieces of paper, and thousands of hours of painstaking labor.

After Audatex's manual review of the documents, Audatex would then be required to manually find the estimate number on the AMPLR and then find and print that estimate from the data repository. The cost and man-hours required to comply with this subpoena are astonishing, and this incredible burden should not be forced upon Audatex in a case where it is not a party to the proceedings. See e.g. U.S. v. Warden, 545 F.2d 32, 36 (7th Cir. 1976)(affirming lower court's order granting the government's motion to quash the subpoena on the ground that "defendant's demand could place an impossible burden on the government.").

### 3. Audatex is Contractually Obligated to Maintain The Confidentiality Of Its Clients' Business Information.

Finally, MQVP, Inc.'s Subpoena also seeks documents which are subject to various confidentiality and/or non-disclosure agreements with various companies and clients. Audatex enters into agreements with many of its clients to maintain their confidentiality. These agreements prohibit Audatex from voluntarily providing documents or information which are its client confidential commercial information. Thus, there is an added burden on Audatex to review the contracts of each customer for confidentiality or non-disclosure clauses, to determine whether or not the documents at issue are covered by the various agreements, and to contact each client to obtain permission to produce.

For the same reasons and many others, Audtex is opposed to bringing in a third-party vendor and giving that vendor unlimited access to our database. Audatex does not want a vendor

*CHI 57269499v2 6/19/2008*                                              9

to have access to all of its business and client information. Placing this remarkable burden on Audatex to search massive amounts of documents, without any limitations, rather than requiring MQVP Inc. to tailor the Subpoena to obtain discoverable information, is not a solution. This Court should grant Audatex's Motion to Quash MQVP Inc.'s Subpoena for the burdensome nature of the request. See Fed. R. Civ. P. 45.

**B.    MQVP INC.'S SUBPOENA DOES NOT MEET THE REQUIREMENTS OF RULE 45.**

Further, the subpoena and notice to produce demands information beyond what is located in the documents. First, MQVP Inc.'s Subpoena calls for Audatex to create new "sortable documents," as it demands Audatex to "provide FTP site access and sortable excel spreadsheets of all estimates written between January 1, 2002 and December 31, 2007 that reference MQVP or Global Validators." (See Ex. B, para. 1). Plaintiff seeks the "names of the insurance companies for which the estimate[s] [were] written, its independent contractors, adjusters, and contract estimating agencies, and the collision repair facilities." (See Ex. B, para. 1). MQVP Inc. goes a step beyond Rule 45 in its attempt to require Audatex to compile information as well as documents. MQVP Inc. is seeking from Audatex a plethora of information relating to the various insurance companies and collision repair facilities that generally work with Audatex. Additionally, other than Keystone and the insurance companies that may have used Keystone, the identity of the insurance companies, independent contractors, adjusters, contract estimating agencies, and other collision repair facilities who use Audatex has no apparent relevance to the claims MQVP, Inc. has asserted against Keystone.

MQVP, Inc. is apparently seeking to avoid having to do its own discovery by forcing Audatex, a non-party, to do that work instead. MQVP should roll up its sleeves and develop this

information from Keystone and from its own records. This is an additional abuse of the subpoena power, and an additional reason to quash the Subpoena. See, e.g., WM High Yield v. O'Hanlon, 460 F. Supp. 2d 891, 896 (S.D. Ind. 2006) (granting motion to quash where subpoenaing party failed to show subpoenaed information was unavailable from other sources). Audatex should not be forced to bear MQVP Inc.'s burden of gathering information for discovery in MQVP Inc.'s proceedings.

### C. AUDATEX SHOULD NOT BE REQUIRED TO BEAR THE EXPENSE TO ATTEMPT TO RESPOND TO THE SUBPOENA.

MQVP, Inc.'s Subpoena appears to be deliberately designed to cause Audatex to spend countless hours and an enormous amount of money to respond. Audatex would be required to design and create a computer program, to conduct a massive search of tens of millions of documents, manually search what could be millions of documents, manually cross reference the information found with estimate claim numbers, print those estimates, and then cross-reference whether or not a particular estimate came from an insurance or other company with which Audatex has a confidentiality, work-product or non-disclosure agreement.

Regardless of how the subpoena may be modified, Audatex will be is forced to expend significant time and resources to respond. That cost should be fully reimbursed by MQVP. See FED. R. CIV. P. 45(c)(2)(B) ("order to compel *shall* protect any person who is not a party ... from significant expense resulting from the inspection ...") (emphasis added); Linder v. Calero-Portocarrero, 251 F.3d 178, 182 (D.C. Cir. 2001) (Rule 45 fee-shifting provision is mandatory where "the subpoena imposes expenses on the non-party, and [where] those expenses are 'significant.' If they are, the court *must* protect the non-party by requiring the party seeking the

discovery to bear at least enough of the expense to render the remainder 'non-significant.' The rule is susceptible of no other interpretation") (emphasis added).

## **CONCLUSION**

MQVP Inc.'s Subpoena is overbroad and unreasonable, and imposes an undue burden and expense upon Audatex. Where, as here, a subpoena casts too wide a net, Rule 45 empowers the Court to protect subpoena targets. Audatex is entitled to such protection, and the Court should quash the Subpoena. At the very least, the Court should exercise its powers under Rule 45 to dramatically modify the Subpoena in a way that will reduce the time and money Audatex would be required to expend for the benefit of MQVP Inc.. In the event that this Court orders that the Subpoena be responded in any way, Audatex should be fully reimbursed for the expense of compliance and of presenting this motion.

Date: June 20, 2008

Respectfully submitted,

AUDATEX NORTH AMERICA, INC.

By: _____
One of its Attorneys

Paul T. Fox (A.R.D.C. No. 3121741)
Tanisha R. Jones (A.R.D.C. No. 6283173)
GREENBERG TRAURIG, LLP
77 West Wacker Drive, Suite 2500
Chicago, Illinois 60601
Tel. (312) 456-8400
Fax (312) 456-8435